In the Matter of A–1 PAVING AND CONTRACTING, INC., Debtor.

Appeal of The PEOPLES STATE BANK.

No. 96–1997.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1996.

Decided June 17, 1997.

Christopher S. Roberge (argued), Foley & Pool, Indianapolis, IN, for Peoples State Bank.

Jay P. Kennedy (argued), Kroger, Gardis & Regas, Indianapolis, IN, for Port Royal Aggregates, Inc.

Before CUDAHY, KANNE and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

A–1 Paving and Contracting Inc. filed for Chapter 11 bankruptcy. Port Royal Aggregates Inc., claiming a security interest in specific equipment and vehicles of A–1, sought termination of the automatic stay order and asked for abandonment of those assets from the bankruptcy estate. Peoples State Bank, asserting a security interest in the same assets, intervened and objected to Port Royal's request.

The bankruptcy court determined that Port Royal had a valid purchase money security interest in the assets in question. The court, therefore, terminated the automatic stay order and abandoned the specified assets from the bankruptcy estate. On appeal

the district court affirmed the bankruptcy court's grant of relief from the stay and order of abandonment.

As did the courts below, we find that the Indiana Supreme Court case of *Gibson County Farm Bureau Co-op. Ass'n, Inc. v. Greer*, 643 N.E.2d 313 (Ind.1994), controls and that Port Royal held a valid purchase money security interest in equipment and vehicles sold to A–1 by way of a Conditional Sales Contract. We thus affirm.

## I. HISTORY

In late August 1992, Port Royal entered into a Conditional Sales Contract with A–1 for the sale of equipment and motor vehicles. These assets were purchased by A–1 for use with its asphalt and aggregate businesses. The purchase price of these assets was to be paid by A–1 in monthly installments to Port Royal. Paragraph 23 of the Conditional Sales Contract reserved to Port Royal "all rights and remedies under the Indiana Uniform Commercial Code relating to the foreclosure of mortgages."[1]

Following the formation of the Conditional Sales Contract, Port Royal filed a UCC–1 financing statement with the Indiana Secretary of State and with the Morgan County and Johnson County Recorders. The financing statement lists A–1 as the "debtor" and Port Royal as the "secured party." This financing statement reveals the existence of a separate document, identified as "Exhibit B," which provides a description of the equipment and vehicles being transferred under the Conditional Sales Contract. Exhibit B was attached to the financing statement. Port Royal maintained title to all the collateral transferred under the Conditional Sales Contract while A–1 gained physical possession of the collateral.

A–1 defaulted on the payments due Port Royal under the Conditional Sales Contract and subsequently filed for Chapter 11 bankruptcy on September 13, 1994. Later that month, another of A–1's creditors, State Bank, intervened in A–1's bankruptcy proceeding. On December 1, Port Royal sought to gain access to the assets in which it claimed title and interest by filing with the bankruptcy court an "Application for Order Terminating the Automatic Stay, for Abandonment of the Automatic Stay and for Adequate Protection." The bankruptcy court held a hearing on February 24, 1995. At that time, A–1 announced its intent to convert from Chapter 11 to Chapter 7, thus eliminating the issue of reorganization. The bankruptcy court then heard evidence on Port Royal's request. On March 16, the bankruptcy court issued its findings of fact and conclusions of law. The court determined that Port Royal had a valid security interest concerning the collateral identified in the UCC–1 financing statement and that it therefore was entitled to relief from the automatic stay and abandonment of the relevant assets from A–1's bankruptcy estate. The district court affirmed the decision of the bankruptcy court and the State Bank appealed to this court.

## II. ANALYSIS

In an appeal from a bankruptcy court's decision, we use the same standard of review used by the district court below: the bankruptcy court's findings of fact are upheld unless clearly erroneous and the legal conclusions are reviewed *de novo*. *In re Marrs–Winn Co.*, 103 F.3d 584, 589 (7th Cir.1996).

We consider a single issue in this case— whether, under Indiana law, Port Royal and A–1 created a valid security interest in the assets that Port Royal contracted to sell to A–1. We must decide this case using principles of Indiana law because "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Our task is made easier because in *Gibson County*, the Indiana Supreme Court was presented with a case that is quite similar to the facts and issue presented here. In *Gibson County*, Indiana's highest court held that a properly-filed UCC–1 financing statement may create an effective security interest under Article 9 of Indiana's Uniform

1. Indiana's version of the UCC is codified in Title 26 of the Indiana Code.

Commercial Code if that financing statement meets the formal writing requirements under § 9–203(1) and the finder of fact determines that the parties intended the financing statement to serve as a security interest. 643 N.E.2d at 320.

In *Gibson County,* a farm products supplier extended credit to a farmer upon a promise to repay and the execution of a financing statement by the farmer. The financing statement 1) was signed by the debtor, 2) identified the farm products supplier as the secured party, and 3) identified the collateral. *Id.* at 314–15. When the farm products supplier sought to recover proceeds from the sale of the same collateral, a judgment creditor (Gibson County Farm Bureau) claimed an interest superior to the farm products supplier. The trial court determined that the farm products supplier held a valid security interest in the collateral and was entitled to the proceeds. *Id.* at 315.

The Indiana Court of Appeals reversed, but the Indiana Supreme Court affirmed the trial court. The Indiana Supreme Court indicated that the sole issue was whether the supplier held a valid security interest in the collateral; and that the resolution of that issue depended on whether the UCC–1 financing statement, properly filed with the county recorder, also served effectively as a security agreement. *Id.* at 315–16.

In resolving this issue, the court held that "[a]lthough we are not willing to go so far as to hold that a standard-form UCC–1 financing statement alone is, as a matter of law, sufficient evidence that the parties intended to create a security interest, we do hold that once the Writing Requirement of § 9–203(1) is satisfied, whether the parties intended the writing to create a security interest is a question of fact for the trier of fact to determine."[2] *Id.* at 320.

In reaching this decision, the Indiana Supreme Court explicitly adopted the approach recommended by White & Summers, which provides:

> Ordinarily, the writing which satisfies the objective statute of frauds requirement above [sec. 9–203(1)(a) ] will also be sufficient proof of an actual intention to create such an interest in the first place. But in problem cases, the writing may barely meet the objective test and no more, leaving for further factual inquiry the question whether the parties also actually intended to create a security interest. Parol evidence is admissible to inform this second inquiry, but not the first.

Id. (citing White & Summers, *Uniform Commercial Code* § 24–5 at 300 (2d ed.1988)).

■■■ *Gibson County* set forth a test requiring both a legal and a factual inquiry to determine if the parties intended a particular writing to create a security interest. In the present case, neither party disputes that the UCC–1 financing statement filed by Port Royal, as a matter of law, satisfies the writing requirement of § 9–203. We therefore may proceed directly to the factual inquiry: Did A–1 and Port Royal actually intend the financing statement to create a security interest? Typically, such an issue of fact is resolved by the bankruptcy court's finding. *See In re Krause,* 114 B.R. 582, 593–94 (Bankr.N.D.Ind.1988) ("Whether ... the agreement satisfies the threshold statute of frauds requirement ... is a question of law for the court. The factual issue of whether ... there was an underlying contractual intent to create a security agreement is a question of fact.").

State Bank argues that "no finding was made, and no evidence was offered, which shows that [Port Royal] and A–1 intended to create [a] security interest in the financing statement." A review of the bankruptcy court's opinion, however, squarely contradicts State Bank's assertion. First, within the "Findings of Fact" section of the opinion, the

---

**2.** Section 9–203(1) of the UCC provides in part:
[A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned;
(b) value has been given; and
(c) the debtor has rights in the collateral.
Ind.Code § 26–1–9–203(1) (1987).

bankruptcy court stated that "[t]he Conditional Sales Contract, at paragraph 23 ... reserved to the seller all rights and remedies under the Indiana Uniform Commercial Code relating to foreclosures of mortgages. In addition, the Conditional Sales Contract speaks to liens upon motor vehicles transferred under the contract." *In Re: A-1 Paving & Contracting, Inc.*, No. 94-06792-FJO-11, at 2 (S.D.Ind. March 16, 1995) (Judge Otte). The Conditional Sales Contract served as strong evidence suggesting that the parties intended their agreement to be governed by the security interest regulations of the UCC.

Another of the court's factual findings explained that "[a] UCC Financing Statement was filed with the Indiana Secretary of State and with the Morgan County Recorder and Johnson County Recorder. A certified copy of the Financing Statement filed with the Indiana Secretary of State was introduced into evidence without objection. The Financing Statement refers to Port Royal as a secured party and A-1 as a Debtor and refers to the equipment and vehicles being transferred under the Conditional Sales Contract as collateral." *Id.* Finally, the court concluded that "[a]fter review of the Conditional Sales Contract, the Financing Statement executed by the Debtor and the conduct of the parties both during and following the transaction, this [c]ourt finds ... that the parties intended the transaction to be a secured transaction, with Port Royal maintaining a purchase money security interest in all equipment and vehicles transferred under the Conditional Sales Contract as collateral for payments called for under the Conditional Sales Contract." *Id.* at 3.

■ Thus, contrary to State Bank's claim, the bankruptcy court unquestionably found that A-1 and Port Royal intended the financing statement to create a security interest. The factual findings of the bankruptcy court are based on parol evidence as well as the UCC-1 financing statement itself—both of which are permissible sources of evidence to determine that the parties intended to create a security interest. Consequently, not only were there findings made, but those findings were not in error.

■ Because we have concluded that the bankruptcy court made the appropriate legal and factual determinations consistent with *Gibson County*, it should therefore come as no surprise that we also agree with the bankruptcy and district courts that the UCC-1 financing statement filed by Port Royal and A-1 created a valid secured interest and the relief sought by Port Royal was properly granted. Accordingly, the opinion of the district court is hereby AFFIRMED.