Kevin D. BROWN, Appellant,

v.

Danielle M. PITZER, Appellee.

In re Kevin D. Brown.

Danielle M. Pitzer, Plaintiff,

v.

Kevin D. Brown, Defendant.

No. IP 99–1295–C–B/S,
Bankruptcy No. IP 96–8284–RLB–7.
Adversary No. IP 97–8.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 2, 2000.

304

Kevin D. Brown, Indianapolis, IN, pro se.

Richard S. Mossler, Indianapolis, IN, for defendants.

*ENTRY AFFIRMING BANKRUPTCY COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF APPELLEE PITZER*

SARAH EVANS BARKER, Chief Judge.

Appellant, Kevin D. Brown ("Brown" or the "Debtor"), accumulated a fairly sizeable pension fund during the course of his now-dissolved marriage to the appellee, Danielle Pitzer ("Pitzer"). When their union soured, the parties sought to dissolve their marriage and divide their property, turning to Indiana state court to accomplish the task. They succeeded, and the Indiana court issued a divorce decree, dividing the marital assets and requiring Brown to file a Qualified Domestic Relations Order ("QDRO") to effectuate the court's equal distribution of the marital property. As it turns out, the QDRO was unnecessary since Brown's pension fund was not subject to ERISA laws, which ordinarily require that a valid QDRO be filed before a pension administrator will release or assign funds in a pension to a third party, such as a former spouse like the appellee here. Nonetheless, instead of filing the QDRO as required by the divorce decree, Brown filed a voluntary bankruptcy petition over two months after the divorce seeking to discharge his "debts," which he claimed included the amount in the pension fund that the Indiana divorce court had awarded to Pitzer. Pitzer initiated an adversarial action in that bankruptcy proceeding, moving for summary judgment that the state court's pension award was not a dischargeable debt in bankruptcy. Pitzer contended that the pension award was not a component of Brown's bankruptcy estate because the pension fund, not Brown, owed her the amount specified in the divorce decree and because the divorce decree vested her with a specific property interest in the pension fund before Brown filed his bankruptcy petition. The bankruptcy court agreed with Pitzer and granted her motion for

summary judgment. For the reasons discussed below, we conclude that the $55,770.33 in pension funds allocated to appellee Pitzer by the divorce decree does not qualify as a dischargeable debt in appellant Brown's bankruptcy proceeding and *AFFIRM* the judgment of the bankruptcy court.

## Background

On June 18, 1996, the Monroe Circuit Court issued a divorce decree dissolving Brown's and Pitzer's marriage. *See* Pitzer Compl. to Determine Dischargeability of Debt (Ex. A, Divorce Decree). Pursuant to that decree, the court assessed the assets and liabilities of each party, fixing the net value of the marital estate at $105,035.48. The court determined that an equal division of the value of the marital property was appropriate, although a significant disparity existed between Brown and Pitzer in respect to the pre-divorce distribution of those assets and liabilities— Brown possessed a net $108,288.07 in assets while Pitzer was saddled with a net liability of $3,252.59. *Id.* ¶ 28. Because Brown had accrued the largest marital asset, a pension fund with an accumulation during marriage valued at $106,501.07, the court determined that Pitzer was entitled to $55,770.33 of the pension funds as a means to equalize the property distribution between the parties. *Id.* ¶¶ 28, 30. Perhaps as a matter of course in Indiana whenever a division of marital property involves a pension plan, or perhaps under the mistaken impression that Brown's pension fund qualified as an ERISA-governed plan, the court ordered Brown to submit a

QDRO to effectuate the transfer of the pension award to Pitzer:

> 30. The property distributed to the parties shall be made equal by a Qualified Domestic Relations Order transferring Fifty-five Thousand Seven Hundred Seventy Dollars and Thirty-three Cents ($55,770.33) from the funds in [Brown's] TIAA/CREF [pension] account to [Pitzer]. [Brown's] attorney shall submit a proposed order within forty-five (45) days from the date of this decree.

*Id.* ¶ 30. The court summarized the same conclusion in its final Order, directing that:

> IV. The parties' property shall be divided between them as set out in Paragraph 28 of this Decree. Respondent, Kevin D. Brown, shall cause the amount of Fifty-five Thousand Seven Hundred Seventy Dollars and Thirty-three Cents ($55,720.33) [sic] in his pension account with TIAA/CREF to be set off to the Petitioner, Danielle M. Pitzer, by a Qualified Domestic Relations Order, to be submitted by Respondent within forty-five days (45) days of this Decree.

*Id.* at 10.

Regardless of the reason for the court-ordered QDRO, however, the pension fund at issue is not governed by ERISA laws, a fact that Brown acknowledges in this appeal. *See* Appellant Br. at 7 n. 1, 17 n. 2 ("Because the Appellant has been employed at a public educational institution rather than a private educational institution, contributions to his TIAA/CREF acconts [sic] are not governed by [ERISA].").[1] Thus, ERISA's anti-alienation provision, which operates to preempt state law and requires that a valid

---

1. Brown is a public employee working for Indiana University, an arm of the State of Indiana itself (*see Velasquez v. Frapwell,* 165 F.3d 593, 594 (7th Cir.1999)), so the contributions to the pension fund on his behalf were effected pursuant to the state of Indiana's establishment of a plan to provide retirement security for its public employees, thereby exempting those plan contributions from ERISA. *See* 29 U.S.C. § 1003(b) ("The provision of this subchapter [ERISA subchapter I, Protection of Employee Benefit Rights] shall

not apply to any employee benefit plan if—(1) such plan is a governmental plan ... "); 29 U.S.C. § 1002(32) (defining "governmental plan" to include plans established or maintained for its employees by the government of any State or its political subdivisions, agencies or instrumentalities); *Warner v. City of Terre Haute,* 30 F.Supp.2d 1107, 1119 n. 4 (S.D.Ind.1998); *Zarilla v. Reading Area Community College,* No. Civ. A. 99–1057, 1999 WL 554609, at *1–2 (E.D.Pa. June 30, 1999).

QDRO be filed before a plan administrator can relinquish pension funds to a third party, is also inapplicable to this case.[2]

Instead of executing a QDRO as ordered by the Indiana court, Brown filed his petition for voluntary bankruptcy on September 3, 1996, over two months after issuance of the divorce decree and well after the 45 days within which the Indiana court required Brown to tender the QDRO. Brown listed in his bankruptcy petition all "debts" that he claimed were dischargeable, including that $55,770.33 in pension funds that the state court had awarded to Pitzer.

On January 7, 1997, appellee Pitzer instituted an adversarial action in Brown's bankruptcy proceeding. On March 26, 1998, Pitzer filed a motion for summary judgment, asserting that the divorce decree vested her with an interest in the pension fund that was her sole and separate property distinct from Brown's dischargeable debts in the bankruptcy estate. On August 4, 1999, the bankruptcy court granted Pitzer's motion for summary judgment, finding that the divorce decree awarded Pitzer a present interest in the pension fund that was neither a debt owed by Brown nor a part of the bankruptcy estate. Brown appeals the bankruptcy court's judgment, which we affirm.

### Jurisdiction and Standard of Review

▆▆▆▆ We have jurisdiction to consider this bankruptcy appeal pursuant to 28 U.S.C. § 158(a). We review the bankruptcy court's legal interpretations de novo; however, we review findings of.fact entered by the bankruptcy court only for clear error. See In re Hancock, 192 F.3d 1083, 1085 (7th Cir.1999); Peterson v. Scott (In re Scott), 172 F.3d 959, 966 (7th Cir.1999). To determine the nature of a debtor's interest in property, we look to state law; to determine whether that interest counts as property of the debtor's estate, we look to federal bankruptcy law. See In re Krueger, 192 F.3d 733, 737 (7th Cir.1999); In re A–1 Paving & Contracting, Inc., 116 F.3d 242, 243 (7th Cir.1997). Because the bankruptcy court granted Pitzer's motion for summary judgment, we must determine whether a genuine issue of material fact exists such that a reasonable trier of fact could return a judgment in appellant Brown's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). In considering a motion for summary judgment, any inferences drawn from the facts must be viewed in the light most favorable to the non-moving party, but only reasonable inferences need be made. See Mills v. Health Care Serv.

2. Congress established ERISA, 29 U.S.C. §§ 1001 et seq., to provide a detailed federal framework for the regulation of employee pension and welfare plans. ERISA generally prohibits the alienation or assignment of employee benefits under such plans. This anti-alienation provision understandably presented difficulties in domestic relation settings where ERISA-governed pensions had to be divided, which prompted Congress to amend ERISA by passing the Retirement Equity Act of 1984. See Metropolitan Life Ins. Co. v. Wheaton, 42 F.3d 1080, 1082 (7th Cir.1994); Paxton v. Paxton, 709 N.E.2d 31, 32 n. 1 (Ind.Ct.App.1999). The amendment created an exception to the anti-alienation rule by authorizing state courts to order the distribution of ERISA pension benefits pursuant to a qualified domestic relations order. See Pond v. Pond, 700 N.E.2d 1130, 1134 n. 8 (Ind. 1998). Some states, such as Illinois, recently have subjected public pension funds (generally not governed by ERISA, supra) to state QDRO requirements. See, e.g., Cullen v. Cullen (In re Cullen), 2000 WL 381929, at *2 (Bankr.N.D.Ill. Apr. 12, 2000); Paxton, 709 N.E.2d at 32 n. 1 (defining a QDRO as a requirement under federal law only, not Indiana law, and noting that because the marital asset in that case was a self-directed IRA not governed by ERISA, a QDRO was an improper mechanism to accomplish the division of that marital asset).

*Corp.*, 171 F.3d 450, 459–60 (7th Cir.1999). However, in this case the facts are not in dispute, leaving us with plenary review of a purely legal issue.

## Discussion

■ The question before us, whether Brown's bankruptcy petition circumscribed any rights that Pitzer may have secured pursuant to the divorce decree, is rendered considerably more straightforward by virtue of the pension fund's independence from ERISA laws. While some courts considering similar questions have tangled with the potentially pre-emptive effect of ERISA's QDRO requirement on a state court's division of marital assets, that concern is not before us. Rather, we look to state law to determine the nature of Pitzer's interest in the marital pension, although we are mindful that federal law determines whether that state law-defined interest constitutes a debt within the meaning of the bankruptcy code. This application of federal law is altogether logical since the bankruptcy code defines what constitutes a dischargeable "debt." The Supreme Court has recognized that while the bankruptcy code provides specific definitions that guide a court's analysis, in the absence of such controlling federal law, terms such as "property" and "inter-ests in property" are creatures of state law. *See Barnhill v. Johnson*, 503 U.S. 393, 397–98, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) (*citing Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.")).

In order for a financial obligation to be dischargeable under federal law, the obligation must be the personal liability of the debtor, as defined by the bankruptcy code. *See, e.g.*, 11 U.S.C. § 524. Hence, a "debt" that arises pre-petition is dischargeable unless it falls within one of the statutory exceptions to discharge listed in the bankruptcy code, such as if the debt qualifies as an award of alimony, maintenance or support. *See, e.g.*, 11 U.S.C. § 523(a)(5). In this case, the parties fail to discuss any statutory exceptions to dischargeability; Pitzer admits that the pension award is not in its nature an award of alimony or maintenance, and neither party timely considers whether the pension award qualifies as a non-dischargeable property settlement "debt."[3] Thus, we take one step back to ask whether Pitzer's divorce award is Brown's "debt" in the first instance, for if the award is not a debt, the statutory

---

**3.** Brown delinquently invoked 11 U.S.C. § 523(a)(15) as a basis to discharge Pitzer's pension award. Brown failed to raise that argument before the bankruptcy court and thus has waived it in this appeal. *See Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir.1997) ("The well-established rule in this Circuit is that a plaintiff waives the right to argue an issue on appeal if she fails to raise the issue before the lower court."). The bankruptcy court never acknowledged that Brown had advanced such an argument, nor did Brown ever cite § 523(a)(15) in his summary judgment submissions before the bankruptcy court. (Brown, acting *pro se*, improperly failed to include in the record the summary judgment briefs filed with the bankruptcy court, so we now expressly incorporate those submissions into the appellate record.) Moreover, even if Brown had mentioned that section of the bankruptcy code, he failed to develop his position before us or explain how it would af-ford him any relief in this action. Section 523(a)(15) constituted a portion of the 1994 amendments to the bankruptcy code and was designed to equalize the code's treatment of alimony awards and non-support awards (property settlements). *See, e.g., Brogan v. Brogan*, 31 Va.App. 769, 525 S.E.2d 618, 621 n. 5 (2000). That section generally favors a former spouse seeking to prevent a property settlement "debt" from being discharged in bankruptcy, for it provides a potential equitable remedy to *prohibit* the dischargeability of debts incurred from property settlements. *See, e.g., In re Gomez*, 206 B.R. 663, 666 (Bankr.E.D.N.Y.1997) (recognizing that § 523(a)(15) typically "is not a debtor's remedy"). While we can understand Pitzer's election not to invoke that provision before the bankruptcy court given her position that her pension fund interest was not Brown's "debt," Brown's invocation of § 523(a)(15), as the debtor, is an unusual strategy, to say the least.

exceptions to the dischargeability of a "debt" become moot.

■ The bankruptcy code defines the term "debt" as "liability on a claim," which in turn is defined broadly to include a "right to payment, whether or not such right is reduced to judgment, ... fixed, contingent, matured, [or] unmatured ... [or a] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. §§ 101(12), 101(5)(A)(B); *In re Knight*, 55 F.3d 231, 234 (7th Cir.1995). Yet, "bankruptcy recognizes state property rights, and filing bankruptcy cannot give a debtor a greater interest in an asset than that which he owned pre-bankruptcy." *Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815, 819 (9th Cir.1997). Whether Pitzer has some right to payment *from Brown* naturally depends on the language of the state divorce decree itself, so we begin with an analysis of Indiana law to determine the nature of Pitzer's interest in the marital pension.

■ Indiana has long-recognized that marriage dissolution contemplates a final separation of the parties and a final division of their property, with "[a]ll questions regarding the adjudication of marital property rights [ ] put to rest by the divorce decree." *See Kelsey v. Kelsey*, 714 N.E.2d 187, 193 (Ind.Ct.App.1999). While this observation provides some insight into the finality of the state court's divorce decree, it helps only marginally, if at all, in determining whether the state court created a "debt" running from Brown to Pitzer or, instead, whether the court vested in Pitzer a present property interest in the pension fund, independent of Brown's eventual bankruptcy estate, as of the date of the decree.

■ Fortunately, the language of the decree clearly provides the answer to that question, a conclusion reinforced by Indiana law. The divorce decree directs the parties to split the marital assets equally, ordering Pitzer's entitlement to $55,770.33 from the pension fund to accomplish the equal division of property. The decree specifies the exact source of the funds, the marital pension, based on the pension's then-current value and not upon some future expectation interest. It also orders a lump-sum payment directly from the pension fund itself—without specifying Brown as the source of the funds. The decree does not allow Brown to choose the source of the payment nor does it contemplate that he is obligated to pay the funds personally. In fact, Pitzer's pension award was not levied against Brown in any respect. His only potential involvement and "obligation" regarding the transaction was to file the paperwork (a QDRO) that the state court believed was procedurally necessary to effectuate the direct transfer of funds from the pension account to Pitzer, which funds represented Pitzer's independent property interest awarded to her by the divorce decree.

In short, the decree calls for transfer of property to Pitzer through an in-kind asset allocation of a portion of the marital pension. *See Paxton v. Paxton*, 709 N.E.2d 31, 33 (Ind.Ct.App.1999) (finding that divorce decree awarding ex-husband over $19,000 from ex-wife's IRA account was an order for transfer of property and not a money judgment); *cf. Von Haden v. Supervised Estate of Von Haden*, 699 N.E.2d 301, 302, 305 (Ind.Ct.App.1998) (finding that divorce decree awarding ex-wife half of ex-husband's ERISA-governed retirement plan vested her with a property right in the plan, not a revocable interest, based on the plan's cash value at the time of separation; affirming trial court, which found that the fact that a QDRO had not been filed by either party did not affect the vested ownership interest that each party had in his/her half of the retirement fund). Thus, we conclude that Pitzer's sole and separate property interest in the pension fund vested upon the issuance of the finalized divorce decree, well before Brown filed his bankruptcy petition. Pitzer's interest in the pension fund ($55,-

770.33) is neither a debt owed by Brown nor a part of his bankruptcy estate subject to discharge.

The Ninth Circuit Court of Appeals considered a case quite similar to the one at bar, finding that a divorce decree vested in the former wife an interest in the debtor's pension fund that was not a dischargeable debt in the debtor's subsequent Chapter 7 bankruptcy proceeding. *See In re Gendreau, supra,* 122 F.3d 815, 817–18 (9th Cir.1997), *cert. denied,* 523 U.S. 1005, 118 S.Ct. 1187, 140 L.Ed.2d 318 (1998). In affirming both the bankruptcy judge's and the bankruptcy appellate panel's independent decisions, the unanimous Ninth Circuit held that the ex-wife had obtained an interest in half of the ERISA pension plan, or at a minimum, a right to obtain a QDRO which would in turn give her an interest in the plans, at the moment the state court decreed that she was entitled to half of the debtor's pension. The court reasoned that the divorce decree, which had ordered the completion of a QDRO to satisfy ERISA's anti-alienation provision, effectively had divested the debtor of half the pension fund by the time he had filed his bankruptcy petition, even if a valid QDRO had not been completed prior to the filing of the bankruptcy petition. Therefore, the ex-wife's divorce award allowed her to pursue a "claim" against the pension plan itself, not against the debtor, which meant simply that the debtor did not personally owe the ex-wife a "debt" that could be discharged in bankruptcy. *Id.* at 819. That the pension in *In re Gendreau* was governed by ERISA and subject to its QDRO requirements, yet the court still determined that the divorce decree vested the former spouse with a separate and non-dischargeable interest in the pension fund, provides additional support for that conclusion where, as here, a pension plan is immune from ERISA's anti-alienation and QDRO provisions.

A litany of federal and state court opinions concur with the result reached by the court in *In re Gendreau;* we join that analysis in deciding this case. *See In re Lowenschuss,* 170 F.3d 923, 930 (9th Cir. 1999) (debtor filed chapter 11 bankruptcy after state court issued divorce decree; finding that wife's interest in pension plan was not dischargeable as the debtor's "debt" because the divorce decree had vested the former wife with an outright ownership interest in 38.7% of the pension assets prior to the debtor's filing his bankruptcy petition; the decree ordered debtor to immediately pay former wife her share of the pension assets directly from the pension fund instead of from some other source); *Bush v. Taylor,* 912 F.2d 989, 993 (8th Cir.1990) (holding that pre-petition divorce decree awarded exwife sole and separate property in a portion of debtor's pension that was not a dischargeable debt in his subsequent bankruptcy; even though debtor served as the conduit for payments to his ex-wife, the debtor held her portion of the monthly pension checks as a constructive trustee only) (en banc); *Dahlin v. Dahlin (In re Dahlin),* 94 B.R. 79, 81 (Bankr.E.D.Va.1988) (similar), *aff'd,* 911 F.2d 721 (4th Cir.1990); *Brogan v. Brogan,* 31 Va.App. 769, 525 S.E.2d 618, 621–22 (2000) (holding that divorce decree obligating debtor to pay former wife half of his pension did not create a dischargeable "debt" owed by the debtor-husband since the decree vested the former wife with a property interest in the pension fund prior to debtor's filing of Chapter 7 bankruptcy); *Rossi v. Rossi (In re Rossi),* No. 98 B 19055, 1999 WL 253124, at *8 (Bankr.N.D.Ill. Apr. 27, 1999) (similar); *Britten v. Britten (In re Britten),* 227 B.R. 820, 821–22 (Bankr.S.D.Ind.1997) (similar) (collecting cases) (Bayt, J.); *McCarthy v. McCarthy (In re McCarthy),* 179 B.R. 876, 878 n. 10 (Bankr.N.D.Ill.1995) (similar); *Cullen v. Cullen (In re Cullen),* Nos. 95–B–25374, 99–A–621, 2000 WL 381929, at *3–4 (Bankr.N.D.Ill. Apr. 12, 2000) (finding that upon entry of a final, pre-petition divorce decree, the former spouse's 30% interest in the debtor's pension became the former spouse's sole and separate property and was not a "debt" dischargeable in

bankruptcy, even if a QDRO was not filed pre-petition; at best, the debtor, as a constructive trustee, held a nondischargeable legal, as opposed to equitable, interest in the portion of the pension funds that he eventually would receive and be obligated to pay to the former spouse); *Bigelow v. Brown (In re Brown)*, 168 B.R. 331, 334 (Bankr.N.D.Ill.1994) (finding that former spouse's rights in portion of debtor's pension plan vested upon the order of the divorce decree even though a valid QDRO had not been entered; the divorce decree awarded former spouse pension benefits that became her sole and separate property, with the post-petition QDRO serving simply to enforce her pre-petition property rights in the pension) (collecting cases); *In re McQuade*, 232 B.R. 810, 812–13 (Bankr. M.D.Fla.1999) (referencing New York state law and concluding that former wife's interest in her former husband/debtor's pension plan vested when the parties divorced and thus did not constitute the debtor's "debt" that could be discharged in his subsequent bankruptcy; holding that the "weight of authority holds that a former spouse's interest in a debtor's pension plan becomes the sole and separate property of that spouse, not a debt, upon entry of a final judgment of divorce"); *In re Gomez*, 206 B.R. 663, 665–66 (Bankr. E.D.N.Y.1997) (finding that pension benefits awarded to debtor's former spouse under divorce decree did not constitute a dischargeable "debt," even though the domestic relations order was entered post-petition, since the divorce judgment granted the former spouse sole and separate property rights in her half of the pension); *Dewey v. Dewey (In re Marriage of Dewey)*, 188 Wis.2d·271, 275–76, 525 N.W.2d 85 (1994) (finding that debtor's neglect in filing a valid QDRO as required by the divorce decree failed to transform the ex-wife's pension award into a "debt" dischargeable in the debtor/ex-husband's subsequent bankruptcy; "we concur with the majority of the federal courts that hold that a division of a pension plan pursuant to a divorce decree does not create an obligation in the employee-spouse but creates two separate property interests that become vested at the moment the decree is entered."); *but see King v. King (In re King)*, 214 B.R. 69, 79–81 (Bankr.D.Conn. 1997) (finding that in the context of a pension fund governed by ERISA, an ex-spouse's award of a 10% "share" in a pension fund was a dischargeable debt in debtor's subsequent bankruptcy; holding that ERISA's requirement for the filing of a valid QDRO, which had not been accomplished by the time debtor filed bankruptcy, pre-empted any conveyance made by the state divorce decree, and finding that the decree did not order payment to the former spouse directly from the pension fund).

The only case cited by appellant that even remotely supports his position that Pitzer's pension award is his dischargeable debt, *In re King*, is easily distinguishable. In *In re King*, the district court in Connecticut concluded that ERISA's QDRO requirement pre-empted what otherwise could be a valid transfer of property under state law since ERISA's anti-alienation provision undisputedly governed the pension plan at issue. Of course, unlike that case, Brown fully acknowledges that his public pension does not qualify as an ERISA plan, immediately undermining the primary argument justifying the court's decision in *In re King*. Furthermore, the court in *In re King* characterized the ex-spouse's 10% "share" in the pension funds (which matured only when the funds became distributable at some point in the future, another distinction from our case) as a "contingent obligation" of the debtor himself in the event the pension administrator refused to pay, a conclusion which that court believed was supported by the "generality" of the "10% share" language in the divorce decree. In contrast, in our case, there is nothing "general" about the language of the divorce decree, nor is there any indication of Brown's putative contingent liability. As we have said, the state court held that Pitzer was entitled to

a specific amount from a specific source, awarded immediately in lump-sum fashion and based on the fund's present value, subject only to the procedural filing of a QDRO that, in the end, was not necessary under federal law after all. *In re King* offers no impediment to the decision we render today.

■ Even if the pension plan in this case were governed by ERISA, we would be hard-pressed to alter our conclusion in light of the information outlined in the divorce decree itself. Our circuit has adopted a pragmatic view of ERISA's QDRO requirement, expressing a willingness to examine the divorce decree itself to determine if it contains the information typically provided by a valid QDRO. *See Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084–85 (7th Cir.1994) (holding that the divorce decree fulfilled the requirements of a QDRO). The true function of a QDRO, while surely important, is merely to provide a plan administrator with the clarity of information needed to distribute pension funds as ordered in a state divorce decree. Thus, to avoid unnecessary and "litigation-fomenting ambiguities" and to spare plan administrators the grief they experience because of uncertainty about the identity of the payee to whom the plan administrator should distribute funds, the amounts of the payments, and the like, ERISA requires a QDRO to clearly specify: (1) the mailing address of each alternate payee, (2) the amount or percentage of the benefits to be paid, (3) the number of payments or period to which the order applies, and (4) each plan to which such order applies. *See* 29 U.S.C. § 1056(d)(3)(C)(i-iv); *Wheaton*, 42 F.3d at 1082 ("It is asking too much of domestic relations lawyers and judges to expect them to dot every i and cross every t in formulating divorce decrees that have ERISA implications.") (Posner, C.J.).

The divorce decree in this case unambiguously reveals all this requisite information, including Pitzer's address, the amount of $55,770.33 in pension benefits due to her, that the entire payment is due upon completion of the proper paperwork, and that the funds are to be paid directly from Brown's specifically-identified pension plan. *See* Divorce Decree at ¶¶ 1, 5, 25, 28, 30, IV (pg.10). We consider it imminently reasonable to expect a plan administrator to be able to discern this information, which a valid QDRO normally contains, simply by reviewing the parties' rather uncomplicated divorce decree.

Finally, even if the divorce decree failed to contain the information normally provided by a QDRO (it does) and the plan in this case were governed by ERISA (it's not), we are unconvinced that Brown's refusal to file a QDRO necessarily would render Pitzer's pension award dischargeable in Brown's bankruptcy.[4] As demonstrated above, the majority of courts considering the issue (even in the context of ERISA-governed plans) have concluded that a former spouse's vested and separate interest in a pension fund is not fundamentally altered by a debtor's failure to complete a pre-petition QDRO. Moreover, even if Brown technically had retained legal title to the entire pension fund in the absence of a valid ERISA QDRO, some courts have determined that a divorce decree vests the ex-spouse, at a minimum, with an equitable interest in those funds, rendering the debtor's solely legal interest in those funds non-dischargeable under the bankruptcy code. *See, e.g., In re Cullen*, 2000 WL 381929, at *4 (*citing* 11 U.S.C. 541(d)).

Brown advances one last, irrelevant argument in an effort to salvage his case for discharge. The state divorce court determined that a parcel of real estate that Brown's parents allowed the parties to use

---

4. We also take note of Brown's apparent contempt of the state court's order to file a QDRO, upon which failure by him he premises his claim in bankruptcy, and, more specifically, this appeal. Brown's culpable conduct, arguably constituting unclean hands, offends traditional notions of equity which infuse our bankruptcy law.

during their marriage was not marital property entitled to division. The court determined that the parties held the property as constructive trustees for Brown's parents and that the property should be reconveyed to them upon the marriage's dissolution. Brown contends that since the state court expressly utilized the term "constructive trustees" in regard to this real property, it likewise would have labeled Brown a constructive trustee of the pension funds awarded to Pitzer if it so intended. Brown concludes with a classic *non sequitur*, arguing that because, in his view, the state court failed to characterize him as a constructive trustee, the court intended Pitzer's pension award to be a debt owed by Brown to Pitzer.

The flaw in Brown's reasoning is obvious: the state court need not have fashioned a constructive trust in Brown to have created in Pitzer a separate interest in the pension fund that vested upon issuance of the divorce decree. The divorce decree did not order that payments be made to Pitzer indirectly through Brown. Brown was not intended to serve as a conduit for any payments whatsoever. The decree awarded Pitzer a direct and immediate interest in $55,770.33 of the pension fund, paid directly to her from the fund itself, without any involvement from Brown save for his completion of a procedural QDRO. The language of the decree, as explicated previously, vested Pitzer with a separate, independent interest in her portion of the pension fund when the state court issued the decree prior to Brown's bankruptcy petition. Characterizing Brown as a constructive trustee was wholly unnecessary to vesting Pitzer with a direct interest in that property. Moreover, even though the state court labeled the parties as constructive trustees for purposes of defining what real property constituted the divisible marital estate, that finding does not necessarily preclude Brown from operating, in equitable effect, as a constructive trustee even if he had received pension payments on Pitzer's behalf, especially where the state court plain-

ly intended Pitzer to enjoy complete legal and equitable rights to her portion of the pension fund.

Ultimately, we conclude that Pitzer's interest in the marital pension vested when the state court issued its pre-petition divorce decree. Appellee Pitzer owned an independent, direct property interest in $55,770.33 of the pension fund that neither constituted Brown's dischargeable "debt" nor became a part of Brown's subsequent bankruptcy estate. Accordingly, we *AFFIRM* the judgment of the bankruptcy court.

### Conclusion

For the reasons discussed above, we conclude that the bankruptcy court properly granted Pitzer's motion for summary judgment when it determined that the $55,770.33 in pension funds awarded to Pitzer pursuant to the state divorce decree was not a dischargeable debt in Brown's subsequent Chapter 7 bankruptcy proceeding. Therefore, the judgment of the bankruptcy court is *AFFIRMED*.