**In re Jody Wolf RUEFF, Debtor.**

**Jackson Gale Rueff, Plaintiff,**

**v.**

**Jody Wolf Rueff, Defendant.**

**Bankruptcy No. 99–72324.**
**Adversary No. 99–7155.**

United States Bankruptcy Court, C.D. Illinois.

June 19, 2000.

James T. Finegan, Bloomington, IL, for debtor/defendant.

Frank E. Hoffman, Bloomington, IL, for plaintiff.

Jeffrey D. Richardson, Decatur, IL, Chapter 7 Trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether the Debtor may use her bankruptcy to avoid her obligations under a Marital Settlement Agreement to divest herself of fifty percent (50%) of the marital portion of her qualified ERISA pension plan and one hundred percent (100%) of her interest in the marital residence.

The parties have presented this adversary proceeding to the Court on the following stipulated facts: The Plaintiff, Jackson Gale Rueff, filed a petition pursuant to Chapter 7 of the Bankruptcy Code on November 9, 1998. The pleadings indicate that Mr. Rueff was having trouble obtaining financial records that he needed to complete his schedules because the records were in the possession of his wife, and a marital dissolution proceeding was pending. The bankruptcy was dismissed on January 7, 1999, on Mr. Rueff's motion. Mr. Rueff filed a new Chapter 7 petition on May 28, 1999. His schedules showed total assets of $109,575.00, including a house on two lots valued at $102,000.00, and total liabilities of $573,764.94, including $108,537.00 in mortgages on the real estate. The schedules indicate that Mr. Rueff does not have an interest in IRA, ERISA, Keogh, or other pension or profit sharing plans. Mr. Rueff received his discharge on September 7, 1999, and his case was closed on December 22, 1999.

The Defendant, Jody Wolf Rueff, filed a petition pursuant to Chapter 7 of the Bankruptcy Code on July 8, 1999. Her schedules showed real estate valued at $102,000.00 with $108,837.00 in liens on it She has $49,000.00 in a pension plan. She scheduled $40,171.90 in unsecured priority claims and $618,062.47 in unsecured non-

priority claims. She received her discharge on October 12, 1999.

The parties were married on May 12, 1984, and they have one child, a boy born in 1994. In 1998, Ms. Rueff filed a petition for dissolution of marriage. A Judgment of Dissolution of Marriage was entered on May 12, 1999. The Judgment provides in pertinent part as follows:

J. That both parties waive maintenance and are hereby forever barred of claiming and receiving maintenance from the other.

K. That each party shall pay their own attorney's fees.

L. That Respondent is awarded the marital domicile and Petitioner will vacate the premises on or before December 1, 1999 and will execute a Quit Claim Deed to Respondent for any and all interest she may have in the premises on December 1, 1999. Respondent shall be responsible for the current rental payments, taxes, insurance and upkeep on the premises. Petitioner shall be responsible for any utility expenses incurred during her possession of the premises.

M. That Respondent is awarded the personal property now in his possession plus the property specifically set out hereafter.

N. That Respondent is awarded one-half of the following portion of the Petitioner's pension which accumulated during the marriage when it is received. One-half of the fraction with the enumerator being the total number of months the parties were married and the pension accumulated, and the denominator being the total number of months that the pension accumulated. The Petitioner is awarded the balance of her pension. A Qualified Domestic Relations Order shall be entered.

Both parties were aware during the pendency of the dissolution proceeding that the other was contemplating filing for bankruptcy protection. Neither party filed a lis pendens in the dissolution action. The Judgment of Dissolution was not filed with the Recorder of Deeds in Macon County where the marital residence is located.

A quit claim deed to the marital residence has not been prepared, tendered or recorded.

Prior to the filing of Ms. Rueff's bankruptcy petition, a Qualified Domestic Relations Order ("QDRO") on Ms. Rueff's pension plan was not prepared, tendered or executed by Ms. Rueff. Following the filing of her petition and without her knowledge, a QDRO concerning her pension plan was executed. Ms. Rueff's pension plan was an ERISA plan, and therefore it was appropriately qualified to be the subject of a QDRO.

Ms. Rueff was residing in the marital residence when she filed her bankruptcy petition, and she had exclusive possession of it.

Mr. Rueff has filed this adversary proceeding to compel Ms. Rueff to do what she agreed to do and what the state court ordered her to do—vacate the marital home, execute a quit claim deed to Mr. Rueff for any interest she had in the residence, and transfer to Mr. Rueff his interest in her pension plan. Ms. Rueff believes that her bankruptcy, which she filed less than two months after the Judgment of Dissolution approved and adopted her agreement to make the above-referenced transfers, excuses her obligations to make the transfers. Ms. Rueff's position is not supported by the case law or equity.

First, addressing the equity issue, the Court notes that the Judgment of Dissolution of Marriage states that "the parties have entered into an oral settlement agreement." The court approved and adopted the agreement. Less than two months later, Ms. Rueff filed her bankruptcy petition with the intention of welshing on her obligations under the agreement and Judgment. The timing of the bankruptcy petition so soon after the

Judgment of Dissolution brings into question Ms. Rueff's good faith in entering into the agreement. The Court does not countenance this sort of legal chicanery.

■ In any event, the case law firmly establishes that a pre-petition divorce decree vests the former spouse with a separate and nondischargeable interest in a pension fund. *In re Lowenschuss*, 170 F.3d 923, 930 (9th Cir.1999); *In re Gendreau*, 122 F.3d 815, 817–18 (9th Cir.1997), *cert. denied*, 523 U.S. 1005, 118 S.Ct. 1187, 140 L.Ed.2d 318 (1998); *Bush v. Taylor*, 912 F.2d 989, 993 (8th Cir.1990); *In re Dahlin*, 94 B.R. 79, 81 (Bankr.E.D.Va. 1988), *aff'd*, 911 F.2d 721 (4th Cir.1990).

Ms. Rueff argues that only a QDRO can effectively transfer an interest in a qualified pension plan under ERISA and, therefore, Mr. Rueff's failure to obtain a QDRO pre-petition means that he did not obtain an interest in the pension plan. As noted in *In re Brown*, 249 B.R. 303 (S.D.Ind. 2000), "the majority of courts considering this issue . . . have concluded that a former spouse's vested and separate interest in a pension fund is not fundamentally altered by a debtor's failure to complete a pre-petition QDRO." For example, *In re Gendreau*, *supra*, held that a former spouse obtained an interest in an ERISA, or at a minimum a right to obtain a QDRO which would in turn give her an interest in the pension plan, at the very instant that the state court decreed that she was entitled to half of the pension. The court found that the divorce decree, which ordered the completion of a QDRO to satisfy ERISA's anti-alienation provisions, effectively divested the debtor of half of the pension fund by the time that he filed his bankruptcy petition, even if a valid QDRO had not been completed pre-petition. An Illinois bankruptcy court reached a similar conclusion on similar facts. *In re Cullen*, 2000 WL 381929 (Bankr.N.D.Ill.2000) found that a former spouse's interest in the debtor's pension plan became her sole and separate property upon entry of the pre-petition divorce decree, even if a QDRO was not filed pre-petition. The court reasoned that the divorce decree vested the former spouse with an equitable interest in the pension plan, and that the debtor held only a legal interest in the funds that was nondischargeable under the Bankruptcy Code. *See In re Brown*, 168 B.R. 331, 334 (Bankr.N.D.Ill.1994); *In re Gomez*, 206 B.R. 663, 665–66 (Bankr. E.D.N.Y.1997). The Court agrees with these decisions.

■ Turning to the marital residence, the Court finds that the Judgment of Dissolution of Marriage created a constructive trust in favor of Mr. Rueff. The marital residence did not become property of the bankruptcy estate. *In re DeLauro*, 207 B.R. 412, 416 (Bankr.D.N.J.1997). Therefore, Ms. Rueff's obligation to execute a quit claim deed to Mr. Rueff for her interest in the marital residence is nondischargeable.

For the foregoing reasons, judgment should be granted in favor of the Plaintiff, Jackson Gale Rueff, and against the Defendant, Jody Wolf Rueff.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that judgment is granted in favor of the Plaintiff, Jackson Gale Rueff, and against the Defendant, Jody Wolf Rueff.

IT IS FURTHER ORDERED that Ms. Rueff's obligation to divest herself of 50% of the marital portion of her qualified ERISA pension plan is nondischargeable under the Bankruptcy Code.

IT IS FURTHER ORDERED that Ms. Rueff's obligation to execute a quit claim deed to Mr. Rueff for her interest in the

marital residence is nondischargeable under the Bankruptcy Code.