In re Michael HANCOCK, Debtor.

Appeal of Charles D. Taylor.

No. 99–1049.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1999.
Decided Oct. 4, 1999.

Charles D. Taylor (argued), Harrisburg, IL, for Appellant.

Michelle L. Vieira (argued), Carbondale, IL, for Appellee Williams.

A. Courtney Cox, Hart & Hart, Benton, IL, for Appellee Tri-State Business Machines, Inc.

Before COFFEY, KANNE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Charles D. Taylor, an attorney from Harrisburg in downstate Illinois, presents this case as one about his disbarment, conjuring up grave due process concerns. In fact, the stakes are not that high. A judge ordered Taylor to pay attorneys' fees to two adverse parties in a bankruptcy proceeding and suspended him from practicing in the Bankruptcy Court for the Southern District of Illinois until the sanction was paid. Taylor indeed paid the sanction, to the tune of around $8,000, and the suspension was lifted. Taylor's payment and the reinstatement of his license does not render this case moot, *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227–29 (5th Cir.1998), but the sanction is much closer to the run-of-the-mill assessment of attorneys' fees than to the more drastic penalty of long-term disbarment. Nevertheless, Taylor appeals the bank-

ruptcy court's action, which was upheld by the district court.

This case grew out of a voluntary *pro se* Chapter 7 bankruptcy petition filed by Michael Hancock. There is no need to get too deeply enmeshed in the details, but a bit of background is required to explain the bankruptcy court's decision. Hancock, according to his bankruptcy petition and his later testimony at the 341 [1] meeting of creditors, owned 90 percent of the stock of Rolling Keg Productions, Inc. Rolling Keg owned a piece of property in Harrisburg, where Taylor practices law. After Hancock filed his bankruptcy petition, Rolling Keg was involuntarily dissolved by the Illinois Secretary of State. The trustee of Hancock's bankruptcy estate sought and received authority from the bankruptcy court under 11 U.S.C. § 363(h) to sell not only the estate's interest but also the non-debtor co-owned interest—including the Harrisburg property.

Taylor, however, wearing his hat as a real estate broker, ignored the bankruptcy court's order and picked up a 10 percent commission for negotiating a sale of the Harrisburg property from Rolling Keg to Jim Watson, who just happened to be the business partner of Taylor's son. This sale occurred five months after Hancock filed his bankruptcy petition, two months after Rolling Keg was dissolved, and one month after the bankruptcy court directed the trustee to sell the property as part of the bankruptcy estate.

The trustee went ahead and sold the property to another third party, Tri–State Business Equipment, Inc. Eventually the bankruptcy court held a trio of hearings to sort things out. Taylor, now wearing his hat as an attorney, appeared on behalf of Rolling Keg.

At the first hearing on March 24, 1998, the bankruptcy court found that Taylor had no authority to represent Rolling Keg prior to March 20, 1998, struck Rolling Keg's pleadings, and entered default judgment against it.

The second hearing was held on April 14, 1998, in response to Taylor's motion on behalf of Rolling Keg to reconsider the March 24, 1998, decision. Taylor, though, didn't show up. The frustrated bankruptcy judge said the , entire case had been "fraught with mis-representations, innuendoes, half truths and fraud." The judge suspended Taylor and Taylor's attorney, Darrell Dunham, from practicing in the bankruptcy court and assessed attorneys' fees.

Later that day the bankruptcy judge stayed the suspension and scheduled another hearing for April 21, 1998. At that hearing the judge heard from Taylor and Dunham, but was unmoved. The judge ordered Taylor and Dunham to pay $8,408 in attorneys' fees (Tri–State's entire legal bill in fighting over title to the property and half of the trustee's legal fees) and suspended them from practicing in the bankruptcy court until the fees were paid.

Taylor argues on appeal that he was denied due process, there were no grounds to support the sanction, and under local rules the matter should have been referred to an independent counsel for investigation.

 Like the district court, we review the bankruptcy court's factual findings for clear error, though our review of the bankruptcy court's legal conclusions is plenary. *In the Matter of A–1 Paving and Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir. 1997). We review the imposition of sanctions for abuse of discretion. *Kovilic Const. Co. v. Missbrenner*, 106 F.3d 768, 771 (7th Cir.1997).

 Taylor claims he was deprived of procedural due process because he had no notice that disciplinary measures would be considered at the April 14, 1998 hearing, was not present at that hearing, and was not given a meaningful opportunity to be

---

1. *See* 11 U.S.C. § 341.

heard at the meeting one week later on April 21. If this is true, Taylor has a case, for an attorney may not be disbarred, suspended, or assessed attorneys' fees without fair notice and the opportunity for a hearing on the record. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). The fundamental requirement of due process, as the Supreme Court has noted, is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ Without notice that sanctions were in the offing and with no opportunity to be heard, Taylor was in fact deprived of his due process rights at the April 14 hearing. However, the bankruptcy court almost immediately stayed the results of that hearing and scheduled another proceeding. So it was essentially a no-harm, no-foul situation because, generally speaking, "procedural errors are cured by holding a new hearing in compliance with due process requirements." *Batanic v. Immigration and Naturalization Service*, 12 F.3d 662, 667 (7th Cir.1993). Taylor had ample notice of the April 21 hearing and he knew that his license could be suspended, as it was on April 14. The transcript from the April 14 hearing was available and clearly indicated the bankruptcy court's concern that Taylor had sold assets of the bankruptcy estate post-petition and had represented Rolling Keg without authority. The reasons for discipline were no mystery. Taylor did speak, albeit briefly, at the April 21 hearing, and Dunham delivered a joint statement prepared by both attorneys. The deprivation of Taylor's due process rights on April 14 was cured by what transpired on April 21.

■ Taylor further contends there is nothing in the record to support the sanctions. Actually, the record contains plenty of support. Though Taylor claimed oral authority to represent Rolling Keg, the record indicates that he testified in a deposition that he essentially fabricated written authority, had not been paid a dime for representing Rolling Keg, and failed to produce Rolling Keg's two shareholders, Michael Hancock and Candace Hancock, to testify about whether he actually had authority to represent the corporation. The bankruptcy court's conclusion that Taylor lacked authority was not clearly erroneous, and representing a corporation without authority warrants discipline.

■ The bankruptcy court also found that Taylor, after Michael Hancock filed for bankruptcy, sold property that was part of the bankruptcy estate. Taylor insists the property belonged to Rolling Keg, not Hancock's bankruptcy estate, but the law is that Hancock's legal and equitable interest in 90 percent of Rolling Keg's shares became property of the estate at the time he filed his· bankruptcy petition. 11 U.S.C. § 541(d). Aside from that, Rolling Keg's dissolution obliterated Hancock's shares by operation of law, but provided his estate with an interest in Rolling Keg's assets. 11 U.S.C. § 541(a)(7). *See In re Margaret and Sam Lipuma*, 167 B.R. 522, 524–25 (Bankr.N.D.Ill.1994). Therefore, Hancock's bankruptcy estate had an interest in the Harrisburg property and Taylor's sale of the property to Watson was an improper, post-petition sale. This, too, warranted sanctions.

■ Finally, Taylor argues that the bankruptcy court should have referred the matter to an independent counsel for investigation under S.D. Ill. Local Rule 29(e)(1). However, Taylor's misdeeds were in the record and further investigation would have been fruitless. We agree with the district court that the bankruptcy judge's failure to follow the local rules was no more than harmless error in this case.

■ Taylor's misdeeds, it seems to us, were more inept than devious. Nothing in the record indicates that Taylor, not a young man, has ever fallen short of meeting the ethical demands placed on him as a

member of the Bar. Nonetheless, selling property that was part of the bankruptcy estate and misrepresenting his authority to represent a corporation were serious enough to justify not just the standard assessment of the opposing parties' attorneys' fees, but also the temporary suspension of his license until those fees were paid. The judgment of the district court, affirming the sanction of the bankruptcy court, is affirmed.