FILED
United States Court of Appeals
Tenth Circuit

April 17, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

KANSAS JUDICIAL REVIEW; THE
HONORABLE CHARLES M. HART; THE
HONORABLE ROBB RUMSEY,

      Plaintiffs–Appellees,

v.

MIKEL L. STOUT, in his official capacity
as a Member of the Kansas Commission on
Judicial Qualifications; JENNIFER L.
JONES, in her official capacity as a
Member of the Kansas Commission on
Judicial Qualifications; NANCY
ANSTAETT, in her official capacity as a
Member of the Kansas Commission on
Judicial Qualifications; PATRICK BRAZIL,
in his official capacity as a Member of the
Kansas Commission on Judicial
Qualifications; THEODORE B. ICE, in his
official capacity as a Member of the Kansas
Commission on Judicial Qualifications;
CHRISTINA PANNBACKER, in her
official capacity as a Member of the Kansas
Commission on Judicial Qualifications;
WILLIAM B. SWEARER, in his official
capacity as a Member of the Kansas
Commission on Judicial Qualifications;
CAROLYN TILLOTSON, in her official
capacity as a Member of the Kansas
Commission on Judicial Qualifications;
ROBERT FLEMING, in his official
capacity as a Member of the Kansas
Commission on Judicial Qualifications;

No. 06-3290

BRUCE BUCHANAN, in his official capacity as a Member of the Kansas Commission on Judicial Qualifications; MARY DAVIDSON COHEN, in her official capacity as a Member of the Kansas Commission on Judicial Qualifications; DAVID J. KING, in his official capacity as a Member of the Kansas Commission on Judicial Qualifications; JEFFERY A. MASON, in his official capacity as a Member of the Kansas Commission on Judicial Qualifications; THOMAS L. TOEPFER, in his official capacity as a Member of the Kansas Commission on Judicial Qualifications; EDWARD G. COLLISTER, JR., in his official capacity as Commission Examiner for the Kansas Commission on Judicial Qualifications; STANTON A. HAZLETT, in his official capacity as Disciplinary Administrator; FRANK D. DIEHL, in his official capacity as Deputy Disciplinary Administrator; ALEXANDER M. WALCZAK, in his official capacity as Deputy Disciplinary Administrator; KIMBERLY L. KNOLL, in her official capacity as Deputy Disciplinary Administrator; GAYLE B. LARKIN, in her official capacity as Admissions Attorney,

     Defendants–Appellants.[*]

------------------------

ASSOCIATION OF JUDICIAL DISCIPLINARY COUNSEL; NATIONAL AD HOC ADVISORY COMMITTEE ON JUDICIAL CAMPAIGN CONDUCT; COLUMBUS BAR ASSOCIATION; DADE COUNTY BAR ASSOCIATION; KING COUNTY BAR ASSOCIATION; GEORGIA COMMITTEE FOR ETHICAL JUDICIAL CAMPAIGNS; SOUTH

DAKOTA'S SPECIAL COMMITTEE ON
JUDICIAL ELECTION CAMPAIGN
INTERVENTION; CONFERENCE OF
CHIEF JUSTICES; CONOCOPHILLIPS,
EMERSON; GENERAL ELECTRIC
COMPANY; GENERAL MILLS, INC.;
GENERAL MOTORS CORPORATION;
HALLIBURTON COMPANY; JP
MORGAN CHASE & CO.; MOTOROLA,
INC; PEPSICO; PHELPS DODGE
CORPORATION; TEXAS INSTRUMENTS
INCORPORATED; TIME WARNER INC.;
WYETH; THE BRENNAN CENTER FOR
JUSTICE AT NEW YORK UNIVERSITY
LAW SCHOOL,

      Amici Curiae.

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:06-CV-04056-JAR)**

---

George T. Patton, Jr. (Marisol Sanchez, Washington, D.C.; and Stephen O.
Phillips, Assistant Attorney General, Topeka, Kansas, with him on the briefs),
Bose McKinney & Evans LLP, Washington, D.C., for the Defendants-Appellants.

James Bopp, Jr. (Thomas J. Marzen, Anita Y. Wondenberg, and Josiah Neeley,
with him on the briefs), Bopp, Coleson & Bostrom, Terre Haute, Indiana, for the
Plaintiffs-Appellees.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), we substitute Jeffery A. Mason for
Robert A. Creighton, Thomas L. Toepfer for Lawrence E. Sheppard, and
Kimberly L. Knoll for Gayle B. Larkin.

Before **LUCERO**, **EBEL**, and **HOLMES**, Circuit Judges.

**LUCERO**, Circuit Judge.

Until March 1, 2009, the Kansas Code of Judicial Conduct ("Code") prohibited candidates for state judicial office from making certain kinds of pledges and commitments and from personally soliciting support for their campaigns. Kansas Judicial Review ("KJR"), the Honorable Charles M. Hart, and the Honorable Robb Rumsey obtained a preliminary injunction from the District Court for the District of Kansas forbidding enforcement of three clauses contained in the Code: (1) the Pledges Clause, (2) the Commits Clause, and (3) the Solicitation Clause (together "the old canons"). The Kansas Commission on Judicial Qualifications ("Commission"), a defendant below, appealed the grant of the preliminary injunction.

After hearing the matter at oral argument, we certified five questions of law to the Kansas Supreme Court. In December 2008, the Kansas Supreme Court answered our certified questions. Shortly thereafter, that court adopted a new Code of Judicial Conduct, which includes significantly revised versions of the Pledges and Commits Clauses and eliminates the Solicitation Clause (the "new canons"). The new canons went into effect and superseded the old canons on March 1, 2009.

We must now decide whether adoption of the new canons moots the plaintiffs' challenge to the old canons. We conclude that it does. Exercising jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), we vacate the preliminary injunction, dismiss the appeal for lack of jurisdiction, and remand to the district court for dismissal in accordance with this opinion.

**I**

Our prior opinion in this case sets forth the relevant factual background, and we repeat only what is necessary to resolve the appeal. Kan. Judicial Review v. Stout ("Stout II"), 519 F.3d 1107, 1111-14 (10th Cir. 2008). Kansas provides for popular election of some judges, holding partisan political contests for judicial office in 14 of its 31 judicial districts. In 1995, the Kansas Supreme Court adopted the Code to regulate the behavior of judges and judicial candidates. Kan. Sup. Ct. R. 601A (1995). Until March 1, 2009, the Code contained the three canons at issue in this appeal.

Canon 5A(3)(d)(i) provided that judicial candidates shall not "make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office" ("Pledges Clause"). Canon 5A(3)(d)(ii) provided that judicial candidates shall not "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court" ("Commits Clause"). Canon 5C(2) provided that "[a] candidate shall not personally . . . solicit publicly stated support," although candidates could

establish committees to solicit and accept support and campaign contributions on their behalf ("Solicitation Clause").

In May 2006, KJR, Rumsey, and Hart filed a complaint against the Commission in federal district court, seeking only prospective injunctive and declaratory relief, and moved for a preliminary injunction. They requested that enforcement of the Pledges, Commits, and Solicitation Clauses be enjoined as unconstitutionally overbroad and vague. They claimed that the Clauses chilled candidates' political speech, restricting the free exchange of views between candidates and potential voters. Additionally, plaintiffs argued that the Clauses were unconstitutional as applied to them.

The district court granted a preliminary injunction as to the Pledges, Commits, and Solicitation Clauses. Kan. Judicial Watch v. Stout ("Stout I"), 440 F. Supp. 2d 1209, 1241 (D. Kan. 2006). The district court found that all plaintiffs had standing to challenge the old canons and that their claims were ripe for review. It also found that plaintiffs were likely to succeed on the merits of their claims of unconstitutionality and that the other preliminary injunction factors weighed in their favor. The Commission timely appealed.[1]

_____

[1] Before the district court, the plaintiffs also challenged Canon 3E, which requires recusal in cases where a judge's "impartiality might reasonably be questioned." The district court denied a preliminary injunction with respect to that canon, and the plaintiffs do not appeal that decision. Accordingly, we express no opinion as to whether the challenge to Canon 3E is moot. That
(continued...)

-6-

After our previous oral argument, we issued an opinion rejecting the

Commission's arguments that KJR lacked standing and that the case was not ripe.

Stout II, 519 F.3d at 1115-18.  As noted, we also certified five questions to the

Kansas Supreme Court because the plaintiffs' claims "rest[ed] on sufficiently

novel and determinative questions of state law."  Id. at 1119-20, 1122.[2]

In December of last year, in a thoughtful and comprehensive opinion, the

Kansas Supreme Court answered our certified questions.  Kan. Judicial Review v.

Stout ("Stout III"), 196 P.3d 1162 (Kan. 2008).  The court advised us that it was

in the process of considering proposed amendments to the Code, id. at 1171, and

proceeded to interpret the old canons without speculating as to the possible

content of the new, id. at 1171-72.  Upon receipt of the Kansas Supreme Court's

opinion, we ordered supplemental briefing.  Our order specifically directed the

parties to address the potential effect on this court's jurisdiction of the

forthcoming amendments to the Code.

In January 2009, the Kansas Supreme Court amended the Code by adoption

of Rule 601B, which went into effect on March 1, 2009.  Kan. Sup. Ct. R. 601B

(2009) (superseding Kan. Sup. Ct. R. 601A (1995)).  That Rule supersedes and

---

[1](...continued)
question will be before the district court on remand.

[2] As acknowledged by all parties, the preliminary injunction issued by the
district court erroneously enjoined enforcement of an unchallenged portion of the
Solicitation Clause.  Accordingly, we vacated that aspect of the preliminary
injunction.  Stout II, 519 F.3d at 1122.

replaces the canons that were extant at the time of initiation of this appeal. Rule 601B substantially alters the landscape. First, the new canons completely eliminate the challenged portion of the Solicitation Clause. Second, they materially narrow the language and scope of the Pledges and the Commits Clauses.

## II

Article III delimits the jurisdiction of federal courts, allowing us to consider only actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. Accordingly, a plaintiff must possess a personal interest in the outcome of a case at all stages of the proceedings. Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." (quotation omitted)). If, during the pendency of the case, circumstances change such that the plaintiff's legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required. See Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182-83 (10th Cir. 2000). A party claiming that there is no longer a live case or controversy bears the burden of demonstrating mootness. Chihuahuan Grasslands Alliance v. Kempthorne, 545 F.3d 884, 891 (10th Cir. 2008) ("If a party to an appeal suggests that the controversy has, since the rendering of judgment below, become moot, that party bears the burden of coming forward with the subsequent events that have

produced that alleged result." (quotation omitted)).

In deciding whether a case is moot, "[t]he crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." Davidson, 236 F.3d at 1182 (quotation omitted). When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot. United States v. Hahn, 359 F.3d 1315, 1323 (10th Cir. 2004) (en banc).

Generally, repeal of a challenged statute causes a case to become moot because it extinguishes the plaintiff's legally cognizable interest in the outcome, rendering any remedial action by the court ineffectual. Davidson, 236 F.3d at 1182 ("The parties have no legally cognizable interest in the constitutional validity of an obsolete statute."); see Nat'l Adver. Co. v. City & County of Denver, 912 F.2d 405, 412 (10th Cir. 1990) ("A declaratory judgment on the validity of a repealed ordinance is a textbook example of advising what the law would be upon a hypothetical state of facts." (quotation omitted)). There is, however, an exception to that rule in cases where the evidence "indicate[s] that the legislature intends to reenact the prior version of the disputed statute." Camfield v. City of Oklahoma City, 248 F.3d 1214, 1223-24 (10th Cir. 2001).

Applied to the facts of this case, there can be no doubt that the plaintiffs' challenge to the Solicitation Clause is moot. As plaintiffs readily concede, in adopting the new canons, the Kansas Supreme Court completely eliminated the

challenged portion of the Clause.  Appellee Supplemental Resp. Br. at 6 ("The revised Code of Judicial Conduct appears to eliminate entirely the challenged portions of the [Solicitation Clause]."); see Davidson, 236 F.3d at 1182.  And there is no suggestion whatsoever that the court intends to readopt the portion of the Clause at issue.

Although the new canons do not entirely eliminate the Pledges and Commits Clauses, compare Canon 5A(3)(d) (1995), with Canon 4.1(A)(6) (2009), we ultimately conclude that plaintiffs' challenges to these clauses are moot as well.  First, any injury caused by the old Pledges and Commits Clauses has ceased because they are no longer in effect—the old canons thus cannot possibly chill the future speech of the plaintiffs.  See Compl. ¶¶ 3, 28, 38, & 95 (claiming that the Pledges and Commits Clauses "chill" protected speech).  Second, a prospective injunction could not effectively redress the claimed injury because, as noted, the old canons can no longer chill the plaintiffs' speech.  See Compl. ¶ 95 (seeking a prospective injunction forbidding enforcement of the Pledges and Commits Clauses); see also Hahn, 359 F.3d at 1323; Davidson, 236 F.3d at 1182.

Plaintiffs attempt to persuade us that their challenges remain live.  For the following reasons, we disagree.

**A**

First, regarding the Pledges and Commits Clauses, the plaintiffs contend that the new canons are materially the same as the old.  See Ne. Fla. Chapter of

-10-

Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662 n.3 (1993) (providing that a case is not moot when a new ordinance "is sufficiently similar to the repealed ordinance that it is permissible to say that the challenged conduct continues"); Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992) ("[A] superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot."). We cannot agree. The new canons contain significant narrowing language not present in the old canons. This change is fundamental to a degree that impacts our jurisdiction over the plaintiffs' challenges to the old Pledges and Commits Clauses. Compare Canon 4.1(A)(6) (2009) (providing that judicial candidates shall not, "in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office" (first emphasis added)), with Canon 5A(3)(d) (1995) (providing that judicial candidates shall not "(i) make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of office; or (ii) make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court . . . ." (emphases added)).

This narrowing language takes on particular significance in the context of a pre-enforcement facial challenge because the plaintiffs' alleged injury is, by its nature, inchoate. We require such an injury to be defined with precision. See Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1088 (10th Cir. 2006) (en banc) ("By definition, the injury [in chilling cases] is inchoate: because speech is chilled, it has not yet occurred and might never occur, yet the government may have taken no formal enforcement action."). In the related context of standing, we have held that mere allegations of a subjective "chill" are inadequate to establish an injury in fact justifying prospective relief. Id. (citing Laird v. Tatum, 408 U.S. 1, 13-14 (1972)). "If all it took to summon the jurisdiction of the federal courts were a bare assertion that, as a result of government action, one is discouraged from speaking, there would be little left of the Article III threshold in First Amendment cases." Id. at 1089. For that reason, we have observed that when "the plaintiff's alleged injury is a chilling effect on the freedom of speech, the standing inquiry is particularly delicate." Id. at 1088. This inquiry is no less refined when the issue is one of mootness rather than standing. See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) ("[M]ootness [is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quotation omitted)). But see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 190 (2000)

-12-

(noting that "the description of mootness as 'standing set in a time frame' is not comprehensive").

While we do not prejudge the issue, the narrowing language of the new canons appears to substantially reduce the potential that new Canon 4.1(A)(6) will chill the plaintiffs' future speech. Consequently, the inchoate injury alleged prior to adoption of the new canons has changed. Upon comparison of the new canons to the old, we are inescapably driven to conclude that the differences are "too fundamental to preserve our jurisdiction over the" plaintiffs' challenges to the old Pledges and Commits Clauses. See Davidson, 236 F.3d at 1182.

**B**

The plaintiffs advance a second argument in seeking to avoid a mootness determination: They will suffer collateral consequences should we vacate the preliminary injunction. See In re Hancock, 192 F.3d 1083, 1084 (7th Cir. 1999); Dailey v. Vought Aircraft Co., 141 F.3d 224, 228 (5th Cir. 1998); Kirkland v. Nat'l Mortgage Network, Inc., 884 F.2d 1367, 1370 (11th Cir. 1989). Specifically, plaintiffs contend that they may be subject to judicial discipline for speech made under the protection of the preliminary injunction. We disagree with this hypothesis as well.[3]

---

[3] In their argument, plaintiffs do not distinguish between KJR and Hart and Rumsey. Unlike Hart and Rumsey, KJR is not directly subject to the Code. Stout II, 519 F.3d at 1115. Because of our ultimate conclusion that the possibility of
(continued...)

Under the collateral consequence doctrine, a case is not moot if there remains a secondary or collateral injury despite the resolution of a plaintiff's primary claim. See Sibron v. New York, 392 U.S. 40, 57 (1968). "[M]ootness [remains] if no consequences can be foreseen or if foreseeable possible consequences seem remote." 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3533.3.1 at 124 (3d ed. 2008) (emphasis added); see Davidson, 236 F.3d at 1184 (rejecting application of collateral consequences doctrine even though "the State may, at some indefinite point in the future, begin prosecuting persons or organizations for pre-repeal violations"). We consider plaintiffs' allegations of collateral consequences as so imbued with speculation and remoteness that they cannot serve as a foundation for our circumspect jurisdictional inquiry. The prospect that the Commission might initiate disciplinary proceedings at some point in the future regarding speech engaged in under the protection of the preliminary injunction is inherently unlikely and thus not foreseeable. An attempt to discipline Hart or Rumsey for such speech would raise such immediate and serious due process concerns that such a probability is less than remote. We are confident that on that front, the Commission will let

---

[3](...continued)
collateral consequences is too speculative and remote to continue our jurisdiction, we do not consider whether the threat of judicial discipline against Hart and Rumsey would suffice to create a present controversy as to KJR.

sleeping dogs lie.

Classically, the collateral consequences doctrine is applicable as to official government sanctions or adjudications that have already occurred. See, e.g., Sibron, 392 U.S. at 57-58 (criminal conviction); Mingkid v. U.S. Atty. Gen., 468 F.3d 763, 768-69 (11th Cir. 2006) (immigration judge's determination that asylum application was frivolous). In the cases relied upon by the plaintiffs, the collateral consequences were caused by an official sanction already in place. See In re Hancock, 192 F.3d at 1084 (suspension of license to practice before bankruptcy court); Dailey, 141 F.3d at 229 (disbarment); Kirkland, 884 F.2d at 1370 (revocation of pro hac vice status). By contrast, we do not have before us any official adjudication that Hart or Rumsey violated the old canons; quite to the contrary, enforcement of the Clauses was enjoined before they were applied against the plaintiffs. Because there has been no official sanction and nothing in the record suggests that disciplinary proceedings are threatened, we reject plaintiffs' request that we keep this case going.

### III

When a case becomes moot on appeal, the ordinary course is to vacate the judgment below and remand with directions to dismiss. Chihuahuan Grasslands Alliance, 545 F.3d at 894. Even so, the plaintiffs argue, only the appeal should be dismissed, not the underlying challenge to the old canons. Plaintiffs reason that they "must and will pursue a permanent injunction to prevent the collateral

-15-

consequence of judicial discipline for the speech engaged in under the protection"
of the preliminary injunction. Because we have rejected the likelihood of
collateral consequences, we perceive no reason to deviate from our general
practice of vacatur in this case. Were the remote and unlikely to happen and Hart
or Rumsey be charged with violating the old canons while acting under the
protection of the preliminary injunction, they remain free to challenge such a
proceeding. But, if the plaintiffs wish to challenge the new canons, they must file
a new complaint.

**IV**

For the reasons stated, we **VACATE** the preliminary injunction, **DISMISS**
the appeal for lack of jurisdiction, and **REMAND** to the district court for
**DISMISSAL** in accordance with this opinion.