**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KANSAS JUDICIAL WATCH;
HONORABLE CHARLES M.
HART; ROBB RUMSEY,

     Plaintiffs - Appellants,

v.

MIKE L. STOUT, in his official
capacity as a Member of the
Kansas Commission on Judicial
Qualifications; JENNIFER L.
JONES, in her official capacity as a
Member of the Kansas
Commission on Judicial
Qualifications; NANCY
ANSTAETT, in her official
capacity as a Member of the
Kansas Commission on Judicial
Qualifications; J. PATRICK
BRAZIL, in his official capacity as
a Member of the Kansas
Commission on Judicial
Qualifications; THEODORE B.
ICE, in his official capacity as a
Member of the Kansas
Commission on Judicial
Qualifications.; CHRISTINA
PANNBACKER; WILLIAM B.
SWEARER, in his official capacity
as a Member of the Kansas
Commission on Judicial
Qualifications; CAROLYN

No. 09-3356

TILLOTSON, in her official capacity as a Member of the Kansas Commission on Judicial Qualifications; ROBERT FLEMING; BRUCE BUCHANAN; MARY DAVIDSON COHEN; ROBERT A. CREIGHTON, in his official capacity as a Member of the Kansas Commission on Judicial Qualifications; DAVID J. KING, in his official capacity as a Member of the Kansas Commission on Judicial Qualifications; LAWRENCE E. SHEPPARD, in his official capacity as a Member of the Kansas Commission on Judicial Qualifications; EDWARD G. COLLISTER, JR., in his official capacity as Commission Examiner for the Kansas Commission on Judicial Qualifications; STANTON A. HAZLETT, in his official capacity as Disciplinary Administrator; FRANK D. DIEHL, in his official capacity as Deputy Disciplinary Administrator; ALEXANDER M. WALCZAK, in his official capacity as Deputy Disciplinary Administrator; JANITH A. DAVIS, in her official capacity as Deputy Disciplinary Administrator; GAYLE B. LARKIN, in her official capacity as Admissions Attorney,

Defendants - Appellees.

**Appeal from the United States District Court**

2

Josiah S. Neeley, Bopp, Coleson & Bostrom, Terre Haute, Indiana (Jeffrey P. Gallant, James Bopp, Jr., and Anita Y. Woudenberg, Bopp, Coleson & Bostrom, Terre Haute, Indiana; and Austin K. Vincent, Topeka, Kansas, with him on the briefs) for Plaintiffs-Appellants.

George T. Patton, Jr., Bose McKinney & Evans LLP, Indianapolis, Indiana (Marisol Sanchez, Bose McKinney & Evans LLP, Indianapolis, Indiana; and Stephen O. Phillips, Office of the Attorney General of the State of Kansas, Topeka, Kansas, on the brief) for Defendants-Appellees.

Before **KELLY**, **EBEL**, and **HOLMES**, Circuit Judges.

**EBEL**, Circuit Judge.

Plaintiffs-Appellants Kansas Judicial Review ("KJR"), the Honorable Charles M. Hart, and Robb Rumsey appeal from the district court's order denying their motion for attorney's fees. This case requires us to decide whether Appellants qualify as "prevailing parties" entitled to attorney's fees under 42 U.S.C. § 1988 where they secured a preliminary injunction that afforded some of the relief sought in the complaint, the district court granted the injunction after finding that Appellants were substantially likely to succeed on the merits of their claims, and the actions of third parties mooted the case before this Court had the opportunity to determine the validity of the preliminary injunction on appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we hold that the

preliminary injunction conferred prevailing-party status on Appellants. Accordingly, we REVERSE the judgment of the district court and REMAND for further proceedings.

## I.    BACKGROUND

Our two prior opinions in this case discuss the relevant factual background in some detail, and we recite only those facts necessary to resolve the instant appeal. See Kan. Judicial Review v. Stout (Stout IV), 562 F.3d 1240, 1244–45 (10th Cir. 2009); Kan. Judicial Review v. Stout (Stout II), 519 F.3d 1107, 1111–14 (10th Cir. 2008). Kansas provides for the popular election of judges in almost half of its judicial districts. In 1995, the Kansas Supreme Court adopted the Kansas Code of Judicial Conduct (the "Code") to govern the behavior of judges and candidates for state judicial office. See Kan. Sup. Ct. R. 601A (1995). Until March 1, 2009, the Code prohibited judicial candidates from making certain kinds of pledges and commitments and from personally soliciting support for their campaigns. Canon 5A(3)(d)(i) stated that judicial candidates "should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office" ("Pledges Clause"). (Aplt. App., vol. I at 23.) Canon 5A(3)(d)(ii) prohibited judicial candidates from "mak[ing] statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court" ("Commits Clause"). (Id.) Canon 5C(2) provided that "a candidate shall not personally . . . solicit publicly stated support" ("Solicitation Clause"). (Id. at 24.)

4

In May 2006, KJR, Hart, and Rumsey sued the individual members of the Kansas Commission on Judicial Qualifications (the "Commission")[1] under 42 U.S.C. § 1983 to challenge the constitutionality of these canons. Appellants claimed that the Pledges, Commits, and Solicitation clauses violated the First and Fourteenth Amendments to the U.S. Constitution by infringing on their rights of free speech and association. Specifically, KJR, a nonpartisan political action committee that educates citizens about judicial candidates, alleged that it wished to collect and publish responses to a "2006 Judicial Candidate Questionnaire" (the "Questionnaire") before the primary election on August 1, 2006. But candidates would not respond to the questions, which were designed to elicit their views on a variety of political and legal issues, for fear of being disciplined under the Pledges and Commits clauses. Hart, an incumbent district judge up for re-election in 2008, asserted that he desired to go door-to-door to seek signatures on a nomination petition, but he feared discipline under the Solicitation Clause. And Rumsey, a candidate for district judge in the 2006 election, alleged that he wanted to express his views to the public by answering the Questionnaire but was afraid to do so because of the canons. Appellants sought a declaration that the canons were unconstitutional, as well as preliminary and permanent injunctive relief prohibiting enforcement of the canons.

On the same day that they filed their complaint, KJR, Hart, and Rumsey also moved for a preliminary injunction to prevent the Commission from initiating

---

[1] The Commission is responsible for investigating allegations of Code violations and recommending disciplinary action when necessary.

5

disciplinary proceedings under the canons against judicial candidates who responded to the Questionnaire. After a hearing, the district court issued a written order granting preliminary relief. See Kan. Judicial Watch v. Stout (Stout I), 440 F. Supp. 2d 1209 (D. Kan. 2006). In a thoughtful and comprehensive opinion, the district court determined that Appellants satisfied each of the four requirements for a preliminary injunction.[2] Id. at 1225–39. The court first concluded that Appellants were substantially likely to succeed on the merits of their claims. Id. at 1225–38, 1240. It analyzed the canons in light of the Supreme Court's decision in Republican Party of Minnesota v. White, 536 U.S. 765 (2002), and found each of the Pledges, Commits, and Solicitation Clauses unconstitutional on its face and as applied. Stout I, 440 F. Supp. 2d at 1233–34 (Pledges and Commits clauses), 1237–38 (Solicitation Clause); see also id. at 1240 ("This Court follows the Supreme Court's opinion in White and finds certain Kansas judicial canons unconstitutional."). After a painstaking examination of the merits prong of the

---

[2] In order to secure a preliminary injunction, the moving party must establish the following elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury will result if the injunction does not issue; (3) the threatened injury to the movant outweighs any damage the injunction may cause the opposing party; and (4) issuance of the injunction would not be adverse to the public interest. Schrier v. Univ. of Co., 427 F.3d 1253, 1258 (10th Cir. 2005). If, however, the movant can demonstrate that the latter three elements weigh heavily in its favor, "the test is modified, and the [movant] may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002) (internal quotation marks omitted). The district court in this case did not apply the "modified" test. For reasons that will be explained below, that fact is critical to our determination that Appellants are "prevailing parties."

preliminary-injunction standard, the court succinctly concluded that Appellants satisfied the other three elements. See id. at 1239 (finding that (1) the chilling effect of the canons on the exercise of Appellants' First Amendment rights constituted irreparable injury, (2) the injury to Appellants outweighed any harm to the Commission, and (3) the injunction would serve the public's interest in receiving speech and learning about judicial candidates). Accordingly, the district court enjoined the Commission from enforcing the canons against any judicial candidate. Id. at 1241.

The Commission appealed the grant of the preliminary injunction to this Court on August 11, 2006. Because the appeal "presented . . . several novel and unsettled questions of state law, the resolution of which could substantially alter our determination of the federal constitutional issues at stake," we certified five questions regarding interpretation of the canons to the Kansas Supreme Court. Stout II, 519 F.3d at 1122. In December 2008, that court answered our questions and also indicated that it had been presented with, but not yet considered, proposed revisions to the Code. Kan. Judicial Review v. Stout (Stout III), 196 P.3d 1162, 1171–79 (Kan. 2008). Approximately one month later, the Kansas Supreme Court amended the Code by adopting Rule 601B, which took effect on March 1, 2009. See Kan. Sup. Ct. R. 601B (2009) (superseding Kan. Sup. Ct. R. 601A (1995)). Rule 601B "completely eliminate[d] the challenged portion of the Solicitation Clause" and "materially narrow[ed] the language and scope of the Pledges and the Commits Clauses." Stout IV, 562 F.3d at 1245. Consequently, this Court

7

vacated the preliminary injunction, dismissed the Commission's appeal as moot, and remanded the case to the district court for dismissal. Id. at 1249.

After the district court dismissed the case, KJR, Hart, and Rumsey filed a motion seeking attorney's fees. They argued that they qualified as "prevailing parties" entitled to a fee award under 42 U.S.C. § 1988 because the preliminary injunction constituted a "judicially enforceable judgment that materially alter[ed] the legal relationship between the parties." (Aplt. App., vol. III at 426–27.) On November 19, 2009, the district court denied the motion, reasoning, in pertinent part, as follows:

> The primary relief sought by plaintiffs was declaratory relief. While plaintiffs succeeded in preserving the status quo—no disciplinary action for answering the questionnaire and for soliciting publicly-stated support— they did not succeed in obtaining relief on the merits. Plaintiffs did not merely seek an injunction that allows them to answer and distribute the questionnaire and solicit publicly-stated support in the 2006 primary election. They sought declarations that the judicial canons at issue were unconstitutional both on their face and as applied to the questionnaire and petitions, in 2006 and beyond. Under these circumstances, the Court does not find that the legal relationship between the parties was materially altered by the preliminary injunction.

(Id. at 629.)

Appellants now seek review of the district court's ruling that the preliminary injunction did not make them "prevailing parties" for purposes of § 1988.

## II. DISCUSSION

In 42 U.S.C. § 1988(b), Congress created an exception to the "American Rule" that each party ordinarily must pay its own attorney's fees. Section 1988(b) provides that in civil-rights actions brought under 42 U.S.C. § 1983, "the court, in its discretion, may

8

allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Whether a litigant qualifies as a "prevailing party" under a fee-shifting statute such as § 1988 is a question of law that we review de novo. See Lorillard Tobacco Co. v. Engida, 611 F.3d 1209, 1214–15 (10th Cir. 2010); Al-Maleki v. Holder, 558 F.3d 1200, 1204 (10th Cir. 2009).

**A.      Meaning of "Prevailing Party" in the Context of Preliminary Injunctions**

The Supreme Court set forth the general standard governing the prevailing-party determination in Texas State Teachers Ass'n v. Garland Independent School District (TSTA), 489 U.S. 782 (1989).   There, the Court stated that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Id. at 792–93. The Court explained that a material alteration in the parties' legal relationship occurs when "the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." Id. at 791–92 (internal alteration and quotation marks omitted).  This standard requires that "'a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail.'" Id. at 792 (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987)).

This Court has twice addressed whether a plaintiff who secured a preliminary injunction could satisfy the standard set forth in TSTA.  In Dahlem v. Board of Education, 901 F.2d 1508 (10th Cir. 1990), Scott Dahlem, a high-school senior, desired to participate in interscholastic gymnastics. Id. at 1510.  But Dahlem's school only had a

9

girls' gymnastics team, and the state high-school activities association did not allow boys to join girls' athletics teams. Id. Dahlem filed suit under 42 U.S.C. § 1983, alleging that this situation amounted to unconstitutional gender discrimination under the Fourteenth Amendment. Id. After an initial hearing, the district court granted Dahlem a preliminary injunction that allowed him to participate in interscholastic gymnastics during the pendency of the case. Id. The defendants appealed the district court's interlocutory ruling to this Court, but while the appeal was pending, the gymnastics season ended. Id. This rendered the case moot because Dahlem was scheduled to graduate before the beginning of the next season. Id. After the district court vacated the injunction and dismissed the case per our instructions, Dahlem filed a motion for attorney's fees, which the district court denied. Id.

On appeal, we considered whether the preliminary injunction rendered Dahlem a "prevailing party" even though the injunction was vacated on mootness grounds before the defendants could challenge its validity in this Court. Id. at 1511. We began by stating that "[f]or the purpose of deciding whether a plaintiff is a prevailing party, a preliminary injunction is considered a decision on the merits so long as it represents an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo." Id. (internal alteration and quotation marks omitted). The injunction at issue there met that standard because the district court's order granting preliminary relief explicitly stated that there was a substantial likelihood that Dahlem would ultimately prevail on his claim. Id. We next observed that TSTA requires a plaintiff to

10

receive at least some relief on the merits of his claim before he may be deemed a "prevailing party," but that nothing in <u>TSTA</u> or any other Supreme Court case precludes a plaintiff from obtaining that relief by some means other than a final judgment. <u>See</u> <u>id.</u> at 1512. Thus, we adopted the rule that "a party which achieves the objective of its suit by means of an injunction issued by the district court [after an unambiguous finding of probable success on the merits] is a prevailing party in that court, notwithstanding the fact that the case becomes moot, through no acquiescence by the defendant, while the order is on appeal." <u>Id.</u> (footnote omitted). Under that rule, Dahlem qualified for prevailing-party status because the preliminary injunction afforded him all of the relief he sought in bringing suit:

> [Dahlem] brought suit so that he could participate in interscholastic gymnastics during his senior year. Because of the district court's preliminary injunction, he did so participate. No subsequent judicial proceedings could have given him any more relief on his claim. It cannot be suggested that Dahlem's foray into the legal system was anything but completely successful.

<u>Id.</u> at 1513.

We reached a different conclusion in <u>Biodiversity Conservation Alliance v. Stem</u>, 519 F.3d 1226 (10th Cir. 2008). In that case, the U.S. Forest Service authorized a sale of timber in the Cement Region of the Black Hills National Forest (the "Cement Project"). <u>Id.</u> at 1227–28. The Biodiversity Conservation Alliance ("BCA") filed a complaint alleging that the Forest Service's actions in planning and developing the Cement Project violated various environmental statutes and the Administrative Procedures Act ("APA").

11

Id. at 1228. BCA also moved for a preliminary injunction to stop the imminent timber sale. Id.

In ruling on BCA's motion, the district court found that BCA would suffer irreparable injury as a result of permanent species loss if the sale went forward. Id. Further, because "the equities tipped heavily towards [BCA]," the district court required only that BCA raise substantial questions on the merits rather than prove a substantial likelihood of success on the merits. Id. (internal alteration and quotation marks omitted). The court concluded that BCA satisfied the "substantial questions" standard and granted the preliminary injunction "to maintain the status quo antebellum" until the court could make a final ruling. Id. (internal quotation marks omitted).

During the pendency of the litigation, a forest fire destroyed approximately ten percent of the timber in the Cement Region that the Forest Service had planned to sell. Id. Consequently, the Forest Service withdrew the Cement Project, and the district court dismissed the case as moot. Id. BCA then moved for attorney's fees, relying in part on the preliminary injunction. Id. The district court granted the motion, and the Forest Service appealed. Id. at 1229.

On appeal, we cited TSTA and explained that "[a] preliminary injunction that does not provide a plaintiff with relief on the merits of her claim cannot serve as the basis for prevailing party status." Id. at 1232. Applying that rule, we held that the preliminary injunction obtained by BCA was insufficient to make BCA a "prevailing party" because the injunction did not provide any of the relief that BCA sought in its complaint. Id.

12

BCA sought a determination that the Cement Project violated environmental statutes and the APA, but the district court's order granting preliminary relief did not "address[] whether the Cement Project was arbitrary and capricious." Id. Instead, the court granted the injunction largely because the balance of equities favored BCA. Id. Therefore, in obtaining the preliminary injunction, BCA won nothing more than "the right to have the status quo preserved, so that had [BCA] prevailed on the merits, its victory would have meaning." Id.

In dicta in Biodiversity, we questioned whether Dahlem remains good law after the Supreme Court's decisions in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001), and Sole v. Wyner, 551 U.S. 74 (2007). Biodiversity, 519 F.3d at 1232. We declined to resolve that issue, however, because the validity of Dahlem was irrelevant to our conclusion that BCA failed to obtain relief on the merits and thus could not meet the "stringent" prevailing-party standard of TSTA. See id. at 1232. Having carefully analyzed Buckhannon and Sole, we now hold that Dahlem survives those decisions.

The plaintiff in Buckhannon sought to recover attorney's fees under the "'catalyst theory,' which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U.S. at 601. But the Supreme Court explicitly rejected that theory as inconsistent with its prior cases recognizing that a "prevailing party" must obtain some form of judicial relief, such as a judgment on the merits or court-ordered consent decree. Id. at 604–06. The

13

Court explained that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Id. at 605. Buckhannon thus stands for the proposition that there must be a judicially sanctioned alteration in the legal relationship between the parties before a plaintiff can be deemed a "prevailing party."[3]

In Dahlem, we held that the plaintiff attained prevailing-party status on the basis of a preliminary injunction. Buckhannon does not undermine that conclusion. A preliminary injunction is a form of court-ordered relief. Thus, "[a] preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy Buckhannon." Watson v. Cnty. of Riverside, 300 F.3d 1092, 1096 (9th Cir. 2002); see also People Against Police Violence v. City of Pittsburg, 520 F.3d 226, 233 n.5 (3d Cir. 2008) ("We need not determine in this case the outer limits of the requisite 'judicial imprimatur.' Whatever those may be, preliminary injunctions are certainly within them." (citation omitted)). We do not mean to suggest, of course, that every preliminary injunction will necessarily render the recipient a "prevailing party." As we have already explained, "to

---

[3] Although the Supreme Court in Buckhannon interpreted the term "prevailing party" under the fee-shifting provisions of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205, the Court recognized that "prevailing party" is a term of art that Congress has used to mean the same thing in numerous statutes. See Buckhannon, 532 U.S. at 602–03 & n.4. Accordingly, Buckhannon's "judicial imprimatur" requirement applies to the prevailing-party analysis under § 1988. See Bell v. Bd. of Cnty. Comm'rs, 451 F.3d 1097, 1102 (10th Cir. 2006) (applying Buckhannon's definition of "prevailing party" in a § 1988 case).

14

be a prevailing party on the basis of a preliminary injunction requires 'relief on the merits.'" Lorillard Tobacco Co., 611 F.3d at 1217 (quoting Biodiversity, 519 F.3d at 1232). We hold only that Buckhannon's "judicial imprimatur" requirement does not make preliminary injunctions categorically insufficient to create prevailing-party status.

In Sole, the Supreme Court addressed the question whether "a plaintiff who gains a preliminary injunction after an abbreviated hearing, but is denied a permanent injunction after a dispositive adjudication on the merits, qualif[ies] as a 'prevailing party' within the compass of § 1988(b)." 551 U.S. at 77. The Court answered that question in the negative, reasoning that whatever "fleeting success" a plaintiff may achieve when a court grants preliminary injunctive relief is negated if the court ultimately rules against the plaintiff on the merits. Id. at 83–86. Thus, the Court held that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." Id. at 83. Significantly, however, the Court explicitly declined to consider the issue involved in both Dahlem and Biodiversity:

> We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees. We decide only that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her.

Id. at 86; see also Biodiversity, 519 F.3d at 1231 ("Unlike the injunction in Sole, the preliminary injunction here was not undone by a final decision on the merits. It is thus in

15

the area explicitly left open by <u>Sole</u>." (citation omitted)); <u>id.</u> at 1232 ("<u>Sole</u> explicitly

declined to decide the question in [<u>Dahlem</u>] . . . ."). Consequently, <u>Sole</u>, like

<u>Buckhannon</u>, leaves our holding in <u>Dahlem</u> undisturbed.

Given that both <u>Dahlem</u> and <u>Biodiversity</u> stand as controlling precedent in this

circuit, we must consider both cases when deciding whether a plaintiff who has secured a

preliminary injunction qualifies as a "prevailing party" eligible for an award of attorney's

fees under § 1988. Those cases, along with the relevant Supreme Court precedent,

establish two overarching principles:

First, and most fundamental, in order for a preliminary injunction to serve as the

basis for prevailing-party status, the injunction must provide at least some relief on the

merits of the plaintiff's claim(s). A preliminary injunction provides relief on the merits

when it (a) affords relief sought in the plaintiff's complaint and (b) represents an

unambiguous indication of probable success on the merits. By contrast, a preliminary

injunction does not provide relief on the merits if the district court does not undertake a

serious examination of the plaintiff's likelihood of success on the merits but nonetheless

grants the preliminary injunction to preserve the status quo because the balance of

equities favors the plaintiff.

Second, if a preliminary injunction satisfies the relief-on-the-merits requirement,

the plaintiff qualifies as a "prevailing party" even if events outside the control of the

plaintiff moot the case. If, however, the preliminary injunction is undone by a

subsequent adverse decision on the merits, the plaintiff's transient success in obtaining the injunction does not render the plaintiff a "prevailing party."

These principles must constitute the beginning point (and, perhaps in many cases, also the ending point) of the prevailing-party inquiry when a plaintiff relies on a preliminary injunction as the basis for an award of attorney's fees.

**B.      The Preliminary Injunction Obtained by KJR, Hart, and Rumsey**

In light of the principles set forth above, we have no trouble concluding that KJR, Hart, and Rumsey are "prevailing parties" in this case.

First, the district court's preliminary injunction provided relief on the merits of Appellants' claims. Regarding the first prong of the relief-on-the-merits requirement, the preliminary injunction afforded Appellants relief that they specifically requested in their complaint. Appellants sought two basic types of relief in their complaint: (1) a declaration that the Pledges, Commits, and Solicitation clauses were unconstitutional; and (2) preliminary and permanent injunctions that would prohibit the Commission from enforcing the canons against judicial candidates who responded to KJR's questionnaire. The preliminary injunction issued by the district court provided the second form of relief as long as it was in effect. That is, the preliminary injunction prohibited enforcement of the challenged canons and allowed Appellants to engage in their speech activities without fear of a disciplinary action during the pendency of the case.

Furthermore, the district court was clear about Appellants' ultimate likelihood of success on the merits. After carefully analyzing the Pledges, Commits, and Solicitation

clauses under the First Amendment, the court expressly concluded that those clauses were unconstitutional and that Appellants were substantially likely to succeed on the merits of their challenge to the clauses. Stout I, 440 F. Supp. 2d at 1240 ("The Court finds that plaintiffs are substantially likely to succeed on the merits of their claims concerning the pledges . . . , commits, and solicitation clauses under Republican Party of Minnesota v. White."); id. ("This Court follows the Supreme Court's opinion in White and finds certain Kansas judicial canons unconstitutional."). We find it difficult to imagine a more "unambiguous indication of probable success on the merits." Dahlem, 901 F.2d at 1511 (internal quotation marks omitted). To borrow the words of the D.C. Circuit, "this is not a case in which a preliminary injunction was based less on the trial court's view of the merits than on a perceived hardship to the plaintiff. Rather, [Appellants] secured a preliminary injunction in this case largely because their likelihood of success on the merits was never seriously in doubt." Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 948 (D.C. Cir. 2005) (citation omitted).

Second, this Court dissolved the preliminary injunction only after the Kansas Supreme Court amended the challenged canons and rendered Appellants' claims against the Commission moot. Significantly, no court ever ruled against Appellants on the merits. Accordingly, the preliminary injunction was sufficient to confer prevailing-party status on Appellants, "notwithstanding the fact that the case bec[a]me[] moot, through no acquiescence by the [Commission], while the order [was] on appeal." Dahlem, 901 F.2d

18

at 1512; see also, e.g., Dupuy v. Samuels, 423 F.3d 714, 723 & n.4 (7th Cir. 2005); Select Milk Producers, 400 F.3d at 947–48; Watson, 300 F.3d at 1096.

The district court determined that Appellants were not "prevailing parties" because they never obtained the "primary relief sought." Specifically, the court reasoned that "[t]he primary relief sought by plaintiffs was declaratory relief. . . . Plaintiffs did not merely seek an injunction . . . . They sought declarations that the judicial canons at issue were unconstitutional . . . . Under these circumstances, the Court does not find that the legal relationship between the parties was materially altered by the preliminary injunction." (Aplt. App., vol. III at 629.)

We cannot agree with the district court's analysis, as it conflicts with the Supreme Court's directives in TSTA. In that case, the Court made clear that the prevailing-party determination does not turn on whether the plaintiff has prevailed on the "central issue" or obtained the "primary relief sought." 489 U.S. at 790–92. "[T]he search for the 'central' and 'tangential' issues in the lawsuit, or for the 'primary,' as opposed to the 'secondary,' relief sought, much like the search for the golden fleece, distracts the district court from the primary purposes behind § 1988 and is essentially unhelpful in defining the term 'prevailing party.'" Id. at 791. Instead, the critical inquiry is whether "the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." Id. at 791–92 (emphases added) (alteration and internal quotation marks omitted); see also McQueary v. Conway, 614 F.3d 591, 603 (6th Cir. 2010) ("A plaintiff crosses the threshold to 'prevailing party' status by

19

succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought."). Where, as in this case, that standard has been met, "the degree of the plaintiff's overall success goes to the reasonableness of the award . . . , not to the availability of a fee award <u>vel non</u>." <u>TSTA</u>, 489 U.S. at 793; <u>see also</u> <u>McQueary</u>, 614 F.3d at 603 ("The significance of the relief obtained goes only to the amount of fees.").

In its brief, the Commission raises one ground for affirmance that was not relied on by the district court. Specifically, the Commission contends that the preliminary injunction cannot serve as the basis for prevailing-party status because it was ultimately vacated, leaving Appellants without an enforceable judgment. This argument ignores our holding in <u>Dahlem</u> and the critical distinction between preliminary injunctions vacated on mootness grounds and preliminary injunctions vacated as a result of an adverse decision on the merits.[4] Appellants secured a preliminary injunction that materially altered the legal relationship between the parties by providing relief on the merits of Appellants'

---

[4] The First Circuit recently explained the distinction as follows:

> Reversal on the merits deprives a plaintiff of "prevailing party" status because it repudiates the favorable change in the parties' legal relationship effectuated by the district court's judgment and holds that the plaintiff was never legally entitled to such relief. In contrast, in the mootness context, a "prevailing party" is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties <u>prior</u> to the intervening act of mootness.

<u>Diffenderfer v. Gomez-Colon</u>, 587 F.3d 445, 453 (1st Cir. 2009).

20

claims. This injunction continued in effect until the Kansas Supreme Court took actions that mooted the case. Neither this Court nor the district court ever issued an order undermining the district court's assessment of the merits of Appellants' claims or Appellants' legal entitlement to relief. Accordingly, the fact that the preliminary injunction was vacated does not deprive Appellants of their status as "prevailing parties."

## III.   CONCLUSION

KJR, Hart, and Rumsey obtained a preliminary injunction that provided some of the relief sought in the complaint, represented an unambiguous indication of probable success on the merits, and was dissolved only after the actions of third parties mooted the case. Under these circumstances, we hold that Appellants are "prevailing parties" within the meaning of 42 U.S.C. § 1988. Therefore, we REVERSE the judgment of the district court and REMAND for further proceedings.